UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELLE MARSHALL,

                        Plaintiff,

v.                                                              5:13-CV-00943

                                                              (MAD/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
*Counsel for Plaintiff*
148 West Dominick Street
Rome, NY 13440

HON. RICHARD S. HARTUNIAN             TOMASINA DiGRIGOLI, ESQ.
United States Attorney for the                Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL            STEPHEN P. CONTE, ESQ.
Social Security Administration                Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the case be remanded for further administrative proceedings consistent herewith.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently 48 years old. (T. at 188.[1]) She holds a Masters in Business Administration. (T. at 43.) She has worked in sales/marketing, and as an accountant, business manager, bartender, and rural route letter carrier. (T. at 45-47.) Plaintiff alleges disability due to anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), personality disorder, mood swings, diabetes, and diabetic neuropathy. (T. at 48-52, 258.)

Plaintiff filed for disability insurance benefits and SSI benefits on January 15, 2012, and January 16, 2012, respectively. (T. at 188-89, 190-197, 234.) The applications were denied on April 6, 2012. (T. at 100; *see also* T. at 98-107.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 108.) The hearing was held on November 15, 2012. (T. at 35.) On November 30, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 16.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 10, 2013. (T. at 1.) Plaintiff commenced this action on August 8, 2013. (Dkt. No. 1.)

---

[1]    Citations identified as "T" refer to the Administrative Transcript and the page numbers set forth therein. (Dkt. No. 9.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the

Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any

step a finding of disability or non-disability can be made, the SSA will not review the claim

further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant
> shows that he is not working at a "substantial gainful activity." [20
> C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find
> nondisability unless the claimant shows that he has a "severe
> impairment," defined as "any impairment or combination of
> impairments which significantly limits the claimant's physical or
> mental ability to do basic work activities." [20 C.F.R.] §§
> 404.1520(c), 416.920(c). At step three, the agency determines
> whether the impairment which enabled the claimant to survive step

3

two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255,

258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful

activity since September 6, 2009. (T. at 11.) At step two, the ALJ found that Plaintiff's diabetes,

diabetic neuropathy, anxiety, and PTSD were severe impairments. (T. at 21.) At step three, the

ALJ found that Plaintiff's impairments, although severe, did not individually, or in combination,

meet or equal any of the criteria of a section of the Listing of Impairments ("Listings"), set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 22-23.)  Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that she retained the ability to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except no repetitive but frequent manipulative work bilaterally."  (T. at 24.)  Additionally, the ALJ found Plaintiff "limited to performing work involving no public contact, and work requiring no more than superficial contact with supervisors and co-employees."  *Id.*  At step four, the ALJ concluded that Plaintiff was unable to perform past relevant work.  (T. at 26.)  The ALJ obtained the testimony of a vocational expert (T. at 73) and at step five, the ALJ concluded that Plaintiff was not disabled because jobs existed in significant numbers in the national economy that Plaintiff could perform.  (T. 27-28.)  Thus, the ALJ denied Plaintiff's claim for disability benefits.  (T. at 28.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) failing to properly evaluate the medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927; and (2) failing to properly assess Plaintiff's credibility.  (Dkt. No. 13 at 13, 19.[2])

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 18.)

## V.    OPINION EVIDENCE

Plaintiff does not take issue with the ALJ's determinations at the first three steps of the

---

[2]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system.

sequential evaluation process. However, before moving to step four, the ALJ determined

Plaintiff's RFC as set forth above. In doing so, Plaintiff contends that the ALJ improperly gave

"little weight" to the opinions of treating psychiatrist, Edward Mehrhof, M.D., while improperly

giving "great weight" to the opinions of non-treating and non-examining medical sources. (Dkt.

No. 14 at 13.) Plaintiff further argues that the ALJ improperly evaluated Plaintiff's credibility

when determining Plaintiff's RFC. *Id.* at 19.

### A. Standard for Determining Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1) (2014). RFC is the individual's maximum remaining ability to

do sustained work activities in an ordinary work setting on a regular and continuing basis, and

the RFC assessment must include a discussion of the individual's abilities on that basis. A

regular and continuing basis means eight hours a day, for five days a week, or an equivalent work

schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*,

198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a

physician's opinion. 20 C.F.R. 404.1546(c) (2014). In determining RFC, the ALJ can consider a

variety of factors including a treating physician's or examining physician's observations of

limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as

the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a)

(2014). Age, education, past work experience, and transferability of skills are vocational factors

to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities

are determined by evaluation of exertional and nonexertional limitations. Exertional limitations

include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 404.1569a(b) (2014).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2010).  Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations.  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted).  In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citation omitted).  RFC is then used to determine the particular types of work a claimant may be able to perform.  *Whittaker*, 717 F. Supp. 2d at 440.

## B.     Treating Physician Rule

Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff.  With regard to the medical opinion evidence, as noted above, Plaintiff argues that the ALJ improperly weighed the medical opinions at issue, especially that of treating psychiatrist Dr. Edward Mehrhof, because (1) the ALJ did not provide "good reasons" for assigning Dr. Mehrhof's opinions little weight; and (2) the ALJ did not address the factors set forth in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 in assessing what weight to give them.  (Dkt. No. 14 at 13-19.)  The Commissioner contends that the ALJ properly weighed

8

the opinion evidence. (Dkt. No. 18 at 8-11.) For the reasons that follow, the Court agrees with the Plaintiff and recommends that this matter be remanded to the Commissioner in accordance with this Report-Recommendation.

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2) (2014). Medically acceptable techniques include consideration of a patient's report of complaints, and the patient's history, as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

 "An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c).

This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.; see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell,* 177 F.3d at 133; *Halloran,* 362 F.3d at 32-33.

However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

**C.    Analysis**

The record shows that Dr. Mehrhof had at least sixteen treatment encounters with Plaintiff between April 6, 2012, and September 27, 2012, with Plaintiff missing only one scheduled appointment in that time period.  (T. at 747-806.)  Dr. Mehrhof's treatment notes indicate he diagnosed Plaintiff with bipolar disorder, PTSD, anxiety/panic disorder with agoraphobia, attention deficit hyperactivity disorder ("ADHD"), and acute stress disorder.  (T. at 747, 771, 781, 787, and 795.)  He prescribed numerous medications for these conditions.  (T. at 759, 761, 769, 773, 775, 793, 799, and 803.)  His notes reflect that Plaintiff was depressed and anxious, she stayed away from people, she was fearful of people, she was easy to anger and get frustrated, she cried a lot, and her mother had abused her and drank too much alcohol when raising her.  (T. at 747, 763, 771, 777, 801.)  Her anxiety increased when working at her part time job of delivering the mail one day every other week; she was asked to resign from the Post Office due to her problems carrying out her job duties; and she was unable to manage the pressure and stress.  (T. at 771, 777.)  Dr. Mehrhof indicated in a report of July 12, 2012, that it was not medically appropriate for Plaintiff to work at that time.  (T. at 658.)  He also responded to a questionnaire regarding her disability and found her to have marked or extreme limitations based upon her mental capacity in most work related functional areas.  (T. at 809.)

Initially, the ALJ noted that "issues of disability are reserved to the Commissioner."  (T. at 26.)  Regarding the questionnaire, the ALJ stated:

[t]he medical opinions . . . appear to be the product of a pre-printed questionnaire,

submitted to Dr. Mehrhof, that include a number of leading questions and similar inducements that do not elicit objective responses, but rather verification of legal conclusions about the claimant's alleged impairments. Though the form does allow for negative check-off responses (e.g. responses that do not help the claimant's case) as well as positive ones, this does not change the fundamentally suggestive construction of the form. The objective medical evidence does not support the opinions related to the claimant's functional limitations and are inconsistent with the substantial evidence of record. For these reasons, the undersigned gives little weight to the opinions from Dr. Mehrhof.

*Id.; see also* T. at 809-11.

The Court finds that the ALJ failed to provide "good reasons" for discrediting the opinions of treating psychiatrist Dr. Mehrhof. His determination to afford little weight to Dr. Mehrhof's opinions as set forth in the questionnaire (which the ALJ seems to imply was provided by Plaintiff's attorney) is problematic for several reasons. First, the ALJ should not have discredited Dr. Mehrhof's opinion simply because it was written on a form questionnaire that may have been supplied by Plaintiff's attorney. "'The mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report.'" *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x. 197, 199 n.2 (2d Cir. 2010) (quoting *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)); *see Balodis v. Leavitt,* 704 F. Supp. 2d 255, 265-66 (E.D.N.Y. 2010). Absent evidence that the questionnaire was so suggestive that it substantially altered Dr. Mehrhof's answers, the ALJ's dismissal of the opinion based on the form used is no substitute for a reasoned analysis of Dr. Mehrhof's opinions on their merits. Notably, the Commissioner likewise uses questionnaires in making RFC disability determinations, and even Listings determinations. *See, e.g.,* T. at 622, 642-645.

Second, the ALJ erred in discrediting Dr. Mehrhof's opinion because it opined on an

12

issue reserved for the Commissioner.  (T. at 26.)  While it is true that no deference need be given

to the conclusion that a claimant has a particular RFC, that fact "does not exempt [the ALJ] from

[his] obligation, under *Schaal* [*v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)] and § 404.1527(d)(2)

to explain why a . . . physician's opinions are not being credited."  *Snell*, 177 F.3d at 134.

Simply stating that the final determination of a plaintiff's RFC is reserved for the Commissioner

is not a reason for rejecting opinion evidence relevant to that determination.  *See, e.g., Ianni v.*

*Barnhart*, 403 F. Supp. 2d 239, 256 (W.D.N.Y. 2005).

Third, "even if the clinical findings were inadequate, it was the ALJ's duty to seek

additional information from the treating physician *sua sponte*."  *Schaal,* 134 F.3d at 505; *see also*

*Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) (stating that an ALJ "cannot reject a treating

physician's diagnosis without first attempting to fill any clear gaps in the administrative record");

*Clark,* 143 F.3d at 118 (explaining that a treating physician's failure to include support for his

findings does not necessarily mean that such support does not exist).  Here, given the nature of

Dr. Mehrhof's findings of disability     as indicated by a series of checked boxes and the

statement that it was not medically appropriate for her to work      the ALJ should have sought

an additional explanation from Dr. Mehrhof in support of his findings.  *Perez v. Chater*, 77 F.3d

41, 47 (2d Cir. 1996) ("[T]he ALJ generally has an affirmative obligation to develop the

administrative record.  This duty exists even when the claimant is represented by counsel.")

(citations omitted).

Fourth, the opinions of Dr. Mehrhof were not so inconsistent with other substantial

evidence of record as to warrant the ALJ's essentially complete disregard of those opinions.

Records from the Family Health Network show that Plaintiff was, at times, depressed and

anxious; she cried a lot; she had insomnia, but did not want to get out of bed. (T. at 341, 406.)

Plaintiff was hospitalized from July 31, 2011, to August 5, 2011, due to her mental health issues.

(T. at 459-479.) Plaintiff treated at Cortland County Mental Health Clinic approximately seven

times between August 10, 2011, and April 10, 2012, where she was diagnosed with PTSD, panic

attacks with agoraphobia, and borderline personality disorder. (T. at 507, 511, 514, 652-55, 680,

704, 708.) She was found to have an intense affect, anxious mood, pressured speech,

psychomotor agitation, and a dramatic, defensive, evasive, and easily distracted attitude. (T. at

652-656.)

Even consultative examiner Jeanne Shapiro, Ph.D. found Plaintiff's mood to be anxious,

depressed, tense, apprehensive, and tearful. (T. at 525-26.) In her medical source statement, she

opined that Plaintiff would have difficulty following instructions, completing tasks, interacting

with others, and attending and maintaining a schedule. (T. at 526.) She diagnosed her with

PTSD, bipolar disorder, obsessive compulsive disorder, and panic disorder with agoraphobia. *Id.*

Thus, Dr. Mehrhof's opinions were actually consistent with other medical findings in the

record.

Finally, the ALJ failed to consider all of the relevant factors discussed above in his

decision to accord little weight, much less controlling weight, to Dr. Mehrhof's opinions. While

reasons advanced by the ALJ relate to the third and fourth factors      *i.e.,* the evidence in support

of the opinions and the consistency of the opinions with the record as a whole      the first and

second factors were apparently not considered at all.

Accordingly, it is recommended that the case be remanded because the reasons cited by

the ALJ for giving "little weight" to Dr. Mehrhof's opinions were flawed. On remand, the ALJ

should assess Dr. Mehrhof's opinions     as he should all opinions     according to the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.

## VI.    PLAINTIFF'S CREDIBILITY

Plaintiff next argues that the ALJ erred in assessing Plaintiff's credibility.  (Dkt. No. 14 at 19.)  The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (T. at 25.)  Plaintiff does not question the first part of the ALJ's credibility determination, however, Plaintiff specifically argues that the ALJ erred because he did not consider all of the evidence of record including her testimony and other statements with respect to her daily activities.  (Dkt. No. 14 at 20.)

### A.    Credibility Assessments by the ALJ

"It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account.  20 C.F.R. § 404.1529 (2014); *Genier,* 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996).[3]  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

---

[3]       There is no Lexis citation for this source.

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen*, 2014 WL 1289575, at *4 (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomology by itself cannot be the basis for a finding of disability . . ., and [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence. *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's

statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3) (2014).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte,* 728 F.2d at 599; *Ferraris,* 728 F.2d 582). "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams,* 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

**B.      Analysis**

Plaintiff contends that the ALJ failed to follow the proper legal standard for assessing her credibility regarding her subjective complaints of pain.  (Dkt. No. 14 at 19.)  The failure, according to Plaintiff, was in the ALJ's improper weighing of the reports of the treating sources regarding Plaintiff's symptoms.  *Id.* at 21.  Plaintiff apparently asserts that the ALJ erred when determining that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (T. at 25; *see also* T. at 24 ("the objective medical evidence does not support limitations greater than in the residual functional capacity")).)

In *Crofoot v. Comm. of Soc. Sec'y*, No. 1:12-CV-521 (GLS/ESH), 2013 WL 5493550, at *11, 2013 U.S. Dist. LEXIS 142035, at *23 (N.D.N.Y. Sept. 30, 2013), Magistrate Judge Earl S. Hines wrote that "[c]redibility-determination boilerplate such as *not credible to the extent inconsistent with the above residual functional capacity* is, at best, gibberish insusceptible to meaningful judicial review," and noted the existence of "numerous cases criticizing this gobbledygook for various reasons, the most serious being that it smacks of determining residual functional capacity before even considering a claimant's subjective testimony."  However, the court also noted that "reviewing courts do not demand perfect decisions, and '[w]hile this sort of boilerplate is inadequate, by itself, to support a credibility finding, . . . its use, does not make a credibility determination invalid.'" *Id.*  (quoting *Adams v. Astrue*, 880 F. Supp. 2d 895, 906 (N.D. Ill. 2012) (internal citations omitted)).

In *Diakogianis v. Astrue*, 975 F. Supp. 2d 299, 318-19 (W.D.N.Y. 2013), the court

determined that the ALJ's credibility assessment was supported by substantial evidence where the ALJ had assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite using boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity." *See also Luther v. Colvin*, No. 12-CV-6466 (MAT), 2013 WL 3816540, at *7-8, 2013 U.S. Dist. LEXIS 102062, at *21 (W.D.N.Y. July 22, 2013) (holding that the credibility assessment was proper where the ALJ found claimant's alleged symptoms "inconsistent with the above residual functional capacity" and where the ALJ's finding was consistent with the entire record); *Briscoe v. Astrue*, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) ("Read in context, however, this statement does not indicate that the RFC assessment was a basis for a finding of a lack of credibility.").

The ALJ in this case considered the medical evidence and opinions in the administrative record regarding Plaintiff's diabetes and diabetic neuropathy. (T. at 24.) The ALJ noted that her treating physician found she had very good blood sugar control by July of 2012. *Id.*; *see also* T. at 743. The ALJ reviewed the record showing that Plaintiff's hand and finger dexterity were intact and her grip strength was full bilaterally upon examination. *Id.*; *see also* T. at 620.

However, regarding Plaintiff's mental impairments from her PTSD and anxiety, the ALJ pointed to a medical record which indicated Plaintiff was remodeling and repairing her home and learning golf. *Id.*; *see also* T. at 728. The ALJ then noted that Plaintiff was diagnosed with depressive and anxiety disorders and PTSD by treating providers and a consultative examiner, and summarily states that the RFC "adequately accounts for the claimant's impairments." *Id.*

This credibility analysis is flawed concerning Plaintiff's mental impairments. First, as explained above, the ALJ's determination of Plaintiff's RFC did not properly consider the

opinion of her treating psychiatrist, Dr. Mehrhof. Thus, it cannot be determined if the RFC is based upon substantial evidence and therefore it cannot be determined if the RFC "adequately accounts" for Plaintiff's mental impairments. Moreover, the record selected by the ALJ which indicates Plaintiff was repairing her home and learning golf is dated May 15, 2012, which predates the majority of Dr. Mehrhof's treatment dates and findings. (T. at 728-30, 765, 767, 771, 777, 779, 781, 787, 789, 791, 795, 797, and 801.)

Second, the ALJ briefly addressed only one of the factors relevant to the Plaintiff's subjective complaints regarding her mental impairments      her daily activities. (T. at 24.) Although the ALJ is not required to address every factor set forth in 20 C.F.R. § 404.1529(c)(3) before making a credibility determination, *see Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (upholding decision addressing three factors), here the ALJ addressed only one of the seven factors, and as explained above, that reasoning is not based upon substantial evidence. This is inadequate. On remand, the ALJ should fully address his reasons for rejecting Plaintiff's subjective complaints regarding her limitations resulting from her mental impairments.

## VII.    VOCATIONAL EXPERT TESTIMONY

Although Plaintiff does not challenge the vocational expert's ("VE") testimony, the Court finds that the VE's testimony may not be considered substantial evidence. "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Where the hypothetical questions presented to a VE do not represent the full extent of Plaintiff's disabilities, an ALJ's determination of no disability based on that VE's testimony cannot be supported by substantial evidence, and remand is appropriate.

*See DeLeon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).

Here, if the Commissioner determines on remand that greater weight should have been assigned to Dr. Mehrhof's opinions, or that Plaintiff's testimony concerning her mental limitations should have been afforded greater credibility, then the questions posed to the VE at the hearing would not have expressed the full extent of Plaintiff's disabilities.

Accordingly, if the Commissioner finds on remand that Plaintiff's RFC incorporates additional limitations not presented to the VE at the November 15, 2012, hearing, then the Commissioner should reevaluate whether there are any jobs existing in the national economy for Plaintiff to perform in light of the additional limitations.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded for further administrative proceedings consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW__. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 15, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

22